IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MARLENA DYMPHNA MARTINEZ,<br><br>Plaintiff,<br><br>v.<br><br>MARTIN J. O'MALLEY, Commissioner, Social Security Administration,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER ADOPTING REPORT & RECOMMENDATION**<br><br>Case No. 4:22-cv-00099-DN-PK<br><br>District Judge David Nuffer<br><br>Magistrate Judge Paul Kohler |

Magistrate Judge Kohler's Report and Recommendation[1] under 28 U.S.C. § 636(b)(1)(B) recommends affirming the Commissioner's decision denying Plaintiff Marlena Martinez's ("Martinez") claim for social security disability benefits and supplemental security income. Martinez objected to the Report and Recommendation.[2]

De novo review has been completed of those portions of the report, proposed findings and recommendations to which objection was made, including the record that was before the Magistrate Judge and the reasoning set forth in the Report and Recommendation.[3]

Under de novo review in a social security case, the district court judge, like the magistrate judge, reviews the commissioner's decision "to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied."[4] "Substantial evidence is such relevant evidence as a reasonable mind

---

[1] Docket no. 22, filed October 11, 2023.

[2] Plaintiff's Objections to the Magistrate Judge's Report and Recommendation ("Objection"), docket no. 23, filed October 23, 2023.

[3] 28 U.S.C. § 636(b).

[4] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

might accept as adequate to support a conclusion."[5] "It requires more than a scintilla, but less than a preponderance."[6] The court will not reweigh the evidence or substitute its judgment for the commissioner's.[7]

Martinez argues in her Objection that the Report and Recommendation contains four findings that should be rejected.[8] Martinez argues that the administrative law judge ("ALJ"): (1) "Failed to Properly Evaluate Plaintiff Under Medical Listing 1.15,"[9] (2) "Failed to Properly Evaluate the Medical Evidence and Failed to Properly Determine Ms. Martinez's Residual Functional Capacity,"[10] (3) " Failed to Properly Evaluate Ms. Martinez's Subjective Statements,"[11] and (4) "Relied on a Flawed Hypothetical Question to the Vocational Expert."[12] These objections are overruled because the ALJ applied the correct legal standards and her determinations and decision were supported by substantial evidence.

1. **The ALJ's Determination that Plaintiff Did Not Satisfy Medical Listing 1.15 was Supported By Substantial Evidence**

The ALJ found that "[a]lthough [Martinez] has 'severe' impairments, they do not meet the criteria of any listed impairments described in Appendix 1 of the regulations . . . nor does the evidence show medical listings that are the same or equivalent to those of any listed impairment of the Listing of Impairments."[13] Martinez argues that the ALJ committed error by finding that

---

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] *Id.* at 2.

[9] *Id.* at 2.

[10] *Id.* at 5.

[11] *Id.* at 15.

[12] *Id.* at 15.

[13] R. 17.

2

Martinez's impairments did not equal the requirements of Medical Listing 1.15.[14] Martinez focuses on the opinion of Dr. Ashok Jilhewar ("Jilhewar"), who opined that Martinez's impairments equal Medical Listing 1.15.[15] Martinez's objection on this issue fails because it improperly seeks a reweighing of the evidence and fails to demonstrate the ALJ's opinion lacked substantial supporting evidence.

The ALJ considered Jilhewar's opinion that Martinez's impairments equaled Medical Listing 1.15 and the ALJ questioned Jilhewar about those conclusions at a hearing,[16] but the ALJ ultimately concluded the record evidence did not show that Martinez had an impairment that met or equaled a listed impairment.[17] Specifically related to listing 1.15 at relevant part here, the listing requires "a documented medical need . . . for a walker, bilateral canes, or bilateral crutches . . . or a wheeled and seated mobility device."[18] And while Jilhewar opined that Martinez's impairments equaled listing 1.15, Jilhewar testified at the hearing that "medically, walker is not necessary" and that he believed it was "a psychological issue" that he was "not qualified to testify about it."[19] Jilhewar further explained that he was not competent to diagnose a somatic issue and did not see any documentation from the psychological providers diagnosing a somatic issue.[20] And even though Jilhewar thought Martinez would miss more than three days in a month at work, he explained that "it is not related to the physical condition. I believe it is the function of the psychological issue rather than the physical issue, because there are no objective

---

[14] Objection at 2-3.

[15] *Id;* R. 2197, R. 2203.

[16] R. 67-71.

[17] R. 17-20.

[18] 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

[19] R. 69.

[20] R. 69.

3

clinical findings to explain her symptoms."[21] Contrary to Martinez's assertion that Jilhewar "offered uncontradicted testimony that [Martinez's] symptoms and use of an assistive device is the result of a somatic issue rather than a physiological issue,"[22] Jilhewar testified he was not competent or qualified to make such a determination.[23]

And as properly explained by Judge Kohler,[24] it is the ALJ—not the medical source—that ultimately weighs the evidence and determines whether impairments equal medical listings. Here, the ALJ carefully explained her determination that Martinez did not meet or equal a listed impairment and cited substantial evidence supporting this determination.[25] Martinez's objection related to the ALJ's evaluation of medical listing 1.15 is overruled.

**2.      The ALJ Properly Evaluated the Medical Evidence in Determining Martinez's RFC**

As part of the Residual Functional Capacity ("RFC") analysis, the ALJ was required to consider medical opinions, but was not required to "defer or give any specific weight . . . to any medical opinion . . . ."[26] The ALJ was also required to provide an analysis of the medical sources using the factors listed in the regulations and to explain how persuasive the opinions were.[27] If a medical source provided multiple opinions, a single analysis of the medical source is sufficient.[28] While the ALJ was required to explain the supportability and consistency factors for a medical source's opinion, the ALJ was not required to explain any other factors.[29] Martinez objects to the

---

[21] R. 70.

[22] Objection at 3.

[23] R. 69.

[24] Report and Recommendation at 11, docket no. 22, filed October 11, 2023.

[25] R. 17-20.

[26] 20 C.F.R. § 404.1520c.

[27] Id.

[28] Id.

[29] Id.

ALJ's RFC determination and the ALJ's analysis of the medical sources.[30] Because the ALJ sufficiently analyzed the medical sources and cited to substantial evidence supporting her RFC determination, this objection is overruled.

Martinez criticizes the ALJ's analysis of the opinions of P.A.-C McBride ("McBride"). The ALJ found some of McBride's opinions not persuasive. Martinez argues the ALJ did not consider the factors of supportability and consistency.[31] However, the ALJ did consider the opinions of McBride and explained why some of the opinions were not persuasive. Although the ALJ did not include the terms supportability and consistency in the discussion of McBride's opinions, the ALJ's analysis was focused on how McBride's opinions were consistent with the record and whether the opinions were supported by evidence. The ALJ pointed to record citations demonstrating Martinez had some pain relief; was managed on medication; had infrequent emergent care needs; and was only treated with a medication dosage change after seeking emergent care.[32] The ALJ also incorporated her analysis of Courtney Ivory's opinions because McBride relied on Ivory's evaluation.[33] The ALJ's discussion of Ivory's opinions highlighted inconsistencies between Ivory's findings and those of others including Dr. West.[34] Overall, the ALJ's RFC analysis sufficiently addresses the factors of the supportability and consistency of McBride's opinions in the ALJ's view. Moreover, the ALJ did rely on McBride's opinions that were consistent with the record showing some lumbar and cervical tenderness as

---

[30] Objection at 5-6.

[31] Objections at 5.

[32] R. 35-36.

[33] R. 36.

[34] R. 35.

well as some muscle weakness in lower extremities, and for these reasons the ALJ limited Martinez to sedentary work in the RFC determination.[35]

Martinez also asserts the ALJ used flawed reasoning in rejecting the opinion of Jilhewar that Martinez would miss work three days a month.[36] Martinez argues the ALJ did not consider the consistency of this opinion with McBride's opinion and that it was improper to reject the opinion based on Jilhewar's lack of specialty in mental impairments.[37] The ALJ is not required to address how each opinion of each medical source is consistent or inconsistent with every other opinion or piece of evidence in the whole record. And the ALJ did consider Jilhewar's opinion in light of the record and noted pain improvements, the lack of frequent presentation in distress, her gait, lumbar x-rays post-fusion, conservative treatment after the fusion, and single emergent care visit that only required an increase in medication.[38] Additionally, while Martinez attributes to the ALJ the limitation of Jilhewar's opinion based on Jilhewar's lack of specialty, it was Jilhewar himself that testified he lacked the qualifications to diagnose or to testify concerning a somatic or psychological issue.[39] The ALJ's determination that Jilhewar's opinion was not persuasive evidence of a somatic or mental issue was not improper because Jilhewar claimed no ability to diagnose or to testify to that issue.

Martinez also argues the ALJ's RFC determination that Martinez could perform sedentary work was supported by "no evidence."[40] The ALJ's RFC determination cites to significant amounts of evidence including examinations, radiology results, and impressions of

---

[35] R. 36.

[36] Objection at 8.

[37] *Id.*

[38] R. 34.

[39] R. 69.

[40] Objection at 9.

medical professionals in determining that sedentary work would be appropriate.[41] This argument is rejected.

Martinez additionally asserts that the ALJ failed to properly evaluate the opinions of N.P. Farnsworth and Dr. Ryser.[42] Martinez primarily focuses on listing supporting evidence for the Farnsworth and Ryser opinions and tries to discount that the record admittedly "contains some other mental status examination findings that are normal or mild . . . ."[43] However, it is not the role of a reviewing court to reweigh the evidence. The ALJ's analysis of the Ryser and Farnsworth opinions found they were not persuasive and pointed out how these opinions were inconsistent with the record and lacking support.[44] The ALJ sufficiently explained why the Farnsworth and Ryser opinions were not persuasive and cited to sufficient evidence supporting this determination.[45]

In short, Martinez seeks a reevaluation of the record evidence that leads to a different determination. This is not the role of the court in evaluating the ALJ's determination. The record here does have inconsistent evidence that arguably could have been weighed differently by a different evaluator. The ALJ's RFC determination includes significant discussion of the inconsistencies in the record. As an example, the ALJ noted the report of Dr. James Maxwell ("Maxwell") that indicated Martinez's history was inconsistent and that the radiographic condition could not cause the pain behaviors expressed by Martinez, and explained that there was no organic reason for Martinez's use of the wheelchair.[46] While Martinez might evaluate the

---

[41] R. 21-39.

[42] Objection at 9.

[43] Objection at 12.

[44] R. 37-38.

[45] R. 37-38.

[46] R. 25, R. 730.

evidence and record differently, the ALJ's determination was supported by substantial evidence and adequately articulated. Martinez's objection to the ALJ's RFC determination is overruled.

### 3. The ALJ Properly Evaluated Martinez's Subjective Statements

Martinez argues that the ALJ failed in her evaluation of Martinez's subjective statements.[47] The ALJ found that while the "[Martinez]'s medically determinable impairments could reasonably be expected to cause the alleged symptoms," Martinez's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ."[48] The ALJ's analysis walks through substantial evidence in the record detailing comparisons between reported symptoms and the reports of medical experts, including inconsistencies between Martinez's reports and the medical evidence.[49] The ALJ's analysis is detailed and exhaustive and includes discussion that clearly demonstrates the ALJ's determination properly considered appropriate factors such as set forth in SSR 16-3p and in *Luna v. Bowen*.[50] Martinez's objection is overruled.

### 4. The ALJ Properly Relied on the Vocational Expert Evidence

The ALJ found that Martinez "can perform sedentary work with mental limitations to account for any concentration deficits or any other mental health/pain symptoms."[51] As part of the RFC analysis, the ALJ cited to evidence of Martinez's mental state including "normal attention span, intact memory, normal cognition, and full orientation" while also acknowledging that Martinez did have "occasional anxious, depressed and irritable mood, inattentiveness,

---

[47] Objection at 15.

[48] R. 22-23.

[49] R. 22-38.

[50] 834 F.2d 161, 165–66 (10th Cir. 1987).

[51] R. 38.

obsessional thought process as well as a flat and tearful affect."[52] Martinez argues that the ALJ improperly relied on a hypothetical posed to the vocational expert and that the ALJ's limitation to unskilled work did not account for Martinez's mental impairments.[53] But it is clear the ALJ did account for Martinez's mental impairments. The ALJ specifically questioned the vocational expert at the first hearing about whether an individual with more limitations than the ALJ's assessed RFC, such as being limited to understanding tasks that can be learned or mastered in 30 days or less, would still be able to do all the SVP 2 jobs.[54] The vocational expert answered in the affirmative.[55] At the second hearing, the ALJ confirmed this with the vocational expert by clarifying this issue further:

> Now I did provide some mental limitations which represent different spots on the moderate spectrum as far as the B criteria is concerned, which I know is not anything vocational. But so if the individual was limited to SVP: 2 work or work that could be learned and mastered in three to six months, like we discussed last time, and if that also incorporated the pain and any mental impairments, would that have any change to your testimony?
>
> A: No.[56]

The ALJ incorporated this testimony in determining that there were jobs that Martinez could perform in significant numbers in the national economy.[57] Because the ALJ's analysis of Martinez's RFC includes information about some mental limitations, and because the ALJ's determination clearly involved discussion with the vocational expert that incorporated Martinez's mental limitations as found by the ALJ, Martinez's objection is overruled.

---

[52] R. 37-38.

[53] Objection at 15-16.

[54] R. 110.

[55] R. 110.

[56] R. 73-74.

[57] R. 40-42.

**Conclusion**

The factual findings of the Commissioner are supported by substantial evidence and the correct legal standards were applied. Therefore, the analysis and conclusion of the Magistrate Judge are accepted and the Report and Recommendation[58] is adopted. The Commissioner's decision is **AFFIRMED**.

**ORDER**

IT IS HEREBY ORDERED that the Report and Recommendation[59] is ADOPTED and the Commissioner's decision is **AFFIRMED**.

The Clerk shall close the case.

Signed September 18, 2024.

BY THE COURT

_____
David Nuffer
United States District Judge

---

[58] Docket no. 23, filed October 23, 2023.

[59] *Id.*